c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RODERICK SANDERS, Plaintiff | CIVIL ACTION NO. 1:17-CV-00898 |
| VERSUS | CHIEF JUDGE DRELL |
| CITY OF WINNFIELD, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted under Fed. R. Civ. P. 12(b)(6), filed by Defendant City of Winnfield ("the City"). (Doc. 8). Plaintiff Roderick Sanders ("Sanders") opposed the motion (Doc. 11). The City replied (Doc. 14). For the reasons below, it is recommended that the City's motion to dismiss (Doc. 8) be GRANTED IN PART, and that the remaining state law claims be REMANDED to state court.

I. **Background**

Sanders filed state and federal claims under Louisiana Code of Civil Procedure Article 591 against the City in the Eighth Judicial District Court for the Parish of Winn, State of Louisiana. Sanders seeks relief for damages allegedly sustained as a result of flooding in the City of Winnfield, Winn Parish, Louisiana on April 30, 2017. (Doc. 1). Sanders claims to represent a class of similarly-situated individuals in his neighborhood who sustained damages as a result of the City's actions. (Doc. 1). Sanders states the legal elements of a class action under Louisiana law. (Doc. 1).

Sanders alleges the City, a Louisiana municipality, maintains custody and control of the drainage facilities within its jurisdictional limits. (Doc. 1). Sanders owns and lives in property located at 107 Boon Street within the city limits of Winnfield. (Doc. 1). Sanders alleges his property was damaged by flooding on or about April 30, 2017. (Doc. 1). Sanders further alleges the damage was caused by the City's failure to properly design, construct, and maintain the drainage facility in and for Sanders's neighborhood. (Doc. 1).

Sanders claims that the City's drainage decisions and practices resulted in Sanders and others in his neighborhood receiving different and lower levels of municipal services and facilities. (Doc. 1). Sanders also alleges his neighborhood is predominantly African American. According to Sanders, similarly-situated, predominantly white neighborhoods within the City's municipal limits received adequate flood and drainage protection to the detriment of Sanders's neighborhood. (Doc. 1). Sanders argues the City systematically and intentionally discriminated against him and other property owners in his neighborhood. (Doc. 1).

Sanders seeks recovery for "property damage, loss of use, inconvenience, aggravation and distress, and health hazard." (Doc. 1). Additionally, Sanders claims he is entitled to damages under the Equal Protection clauses of the federal and state constitutions, the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Doc. 1)

The City removed the case to federal court on the sole basis of federal question jurisdiction, 28 U.S.C. § 1331. (Doc. 1). The City now seeks dismissal under Fed. R.

Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 8). The City claims Sanders: (1) fails to meet the basic pleading requirements of Rule 8 by providing only a threadbare recitation of legal elements; (2) asserts an Equal Protection Claim alleging differential treatment arising from race-based animus without pleading facts sufficient to establish discriminatory intent or identifying a like comparator; (3) fails to identify any allegedly discriminatory action taken by a person acting under color of law; (4) asserts a violation of 42 U.S.C. § 1981 without alleging any impairment of contractual rights; and (5) fails to identify a policy or custom sufficient to bring a Monell claim against a municipality. (Doc. 8).

II.  Law and Analysis

   A. Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement…showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual

3

allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id. However, a federal court may not apply a heightened pleading standard, more stringent than usual pleading requirements, in civil rights cases alleging municipal liability under § 1983. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993).

  B. <u>Sanders failed to state federal claims upon which relief can be granted.</u>

    1. <u>42 U.S.C. § 1983</u>

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity by the Constitution and laws of the United States. 42 U.S.C. § 1983. Municipalities are "persons" within the meaning of § 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. <u>Lugar v. Edmondson Oil Co., Inc.</u>, 475 U.S. 922, 937 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of Section 1983. <u>Shelley v. Kraemer</u>, 334 U.S. 1, 13 (1948). Traditionally, "acting under color of state law requires that a defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988) (citing <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)).

 To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." <u>Leffall v. Dallas Independent School District</u>, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. <u>Id.</u>; <u>see also</u> <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 515 (5th Cir. 1995).

Under Monell, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures. Monell, 436 U.S. 658. Municipalities cannot, however, be liable under Section 1983 for the constitutional torts of their employees under the doctrine of respondeat superior. Id. at 691. Thus, a "Monell claim" is a claim against a municipality for a constitutional deprivation which is tied directly to a policy or custom of the municipality.

Accordingly, Sanders must show that the City, a Louisiana municipality, was acting under color of state law at the time of the alleged acts. Sanders must show (1) the existence of a municipal custom or policy; and (2) a direct causal link between the custom or policy and the alleged violation. Monell, 436 U.S. at 694. Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579. A policy is official only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

Sanders makes conclusory allegations that the City's drainage decisions and practices resulted in Sanders and others in his neighborhood receiving different and lower levels of municipal services and facilities. (Doc. 1) Sanders alleges the City's drainage and land use policies do not protect the property in his neighborhood from flooding and do not provide adequate drainage; whereas the City uses those same

policies to protect property in predominantly white neighborhoods. (Doc. 1). But his Complaint does not contain facts to show what the drainage decisions and practices are, or how, when, or where these drainage decisions and practices occurred. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 U.S. at 679.

Sanders has failed to plead facts which, accepted as true, would support Monell liability against the City. Sanders's Complaint does not include factual allegations that a specific policy or custom exists in the City, or that the specific policy or custom caused the violations Sanders alleges.

### 2. Equal Protection Clause and Discrimination.

To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class[,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Gibson v. Texas Dep't of Ins. – Div. of Workers' Comp., 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted).

To survive the pleading stage on a race-based discrimination claim under the Equal Protection Clause, Sanders must allege facts to establish he was treated differently from similarly situated individuals, and that the unequal treatment stemmed from discriminatory animus. Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (citation omitted); see also Bowlby v. City of Aberdeen, Miss., 681 F.3d 215, 227 (5th Cir. 2012) (citations omitted). "Discriminatory purpose…implies that the

7

decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Id. (citation and internal quotation marks omitted).

Moreover, when a plaintiff alleges discrimination on grounds other than membership in a protected group, he may proceed under a "class of one" theory if he shows "(1) that [he] was intentionally treated differently from others similarly situated and (2) that there was no rational basis for the difference in treatment." Newman Marchive Partnership, Inc., v. Hightower, 349 Fed.Appx. 963, 966 (5th Cir. 2009)(unpubl.).

Sanders makes a conclusory allegation that his predominantly African-American neighborhood was discriminated against by the City's drainage decisions which resulted in his neighborhood receiving different and lower levels of municipal services and facilities. (Doc. 1). However, Sanders has neither demonstrated that he was a member of a protected group, nor that the City treated him any differently from other residents. See Bowlby, 681 F.3d at 227 (no factual allegations that defendants' actions were the result of intentional discrimination); Smith v. Kimbhal, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal).

Sanders does not identify any facts to show he, himself, is African-American, or otherwise a member of a protected class. Sanders does not identify the neighborhood(s) that are "pre-dominantly white neighborhoods," or plead facts regarding how these neighborhoods are "similarly situated" to his "pre-dominantly

8

African American neighborhood." Also, Sanders does not identify the differences in services provided for the unidentified neighborhood(s). Accordingly, his allegations under the Equal Protection Clause fall short.

### 3. 42 U.S.C. § 1981

Sanders alleges he is entitled to damages under 42 U.S.C. § 1981. (Doc. 1). Section 1981 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981. The Supreme Court has stressed that any claim brought under Section 1981 "must initially identify an impaired 'contractual relationship,'…under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-75 (2006). "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Id. at 479-80.

Section 1981 grants a right of action against private actors, but not against local government entities. Oden v. Oktibbeha Cty., 246 F.3d 458, 463 (5th Cir. 2001) ("Subsection (c) [of section 1981] does not expressly create a remedial cause of action against local government entities."). The only provision allowing for a claim against a government entity for violation of the rights protected by section 1981 is section 1983. Id.; Jett, 491 U.S. at 731 ("We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state

9

actor."). Thus, Sanders can have no stand-alone claim against the City under section 1981.

Sanders has not alleged the existence of a contract or any racial discrimination in contracting by the City. Also, Sanders has not alleged any violation of his § 1981 right to "make and enforce contracts" caused by a custom or policy within the meaning of Monell. Sanders has failed to state a claim for relief against the City under Section 1981.

### 4. Sanders's State Law Claims

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); see Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). There are remaining state law tort claims and state constitutional claims.

The Fifth Circuit has emphasized that "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992). Here, the balance of factors weighs towards declining to exercise supplemental jurisdiction. This matter is still in its early stages, as this matter was recently removed to federal court. No discovery has been conducted of pleadings. (Doc. 11). Judicial economy favors remand. Federalism and comity concerns also

favor remanding, as all remaining claims against the City must be decided under state law. It is recommended that this Court decline to exercise supplemental jurisdiction over Sanders's state claims.

III. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted (Doc. 8) filed by the Defendant City of Winnfield be **GRANTED IN PART**, and that Sanders's claims arising under the laws and Constitution of the United States be **DISMISSED WITHOUT PREJUDICE.** Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that any remaining claims arising under the laws of the State of Louisiana be **REMANDED** to the Eighth Judicial District Court for the Parish of Winn, State of Louisiana. 28 U.S.C. §§ 1367(c)(3) and 1441(c)(2).

**The recommended dismissals are subject to Sanders's right to amend his complaint to cure, provided he has a good faith basis for doing so, the legally deficient allegations against the City, within the fourteen (14) day deadline to file objections to this report and recommendation.**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen

(14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __18th__ day of October, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge